UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
                                                   :

NETTIE M. CURRY,

                                                   :        06 CV 8319 (MGC)(DFE)

                        Plaintiff,          :

                                                 :

                 - against -

                                                 :

AMERICAN GENERAL INTERNATIONAL GROUP,    :
INC. PLAN NO. 502 and AMERICAN INTERNATIONAL
LIFE ASSURANCE COMPANY OF NEW YORK,       :

                                                 :

                        Defendants.

------------------------------------------------------------ x

## JOINT STATEMENT OF MATERIAL FACTS PURSUANT TO LOCAL CIVIL RULE 56.1

All parties submit this Joint Statement of Undisputed Facts pursuant to Local Civil Rule 56.1 and the court's directive at the pre-motion conference:

1.      Curry was employed by American International Group ("AIG") as a Regional Underwriting Manager. Administrative Record[1] ("AR") at AG 0631, 0640.

2.      As an employee of AIG, Curry was a participant in a long term disability benefits Plan, ("the LTD Plan"). She is insured under group long term disability insurance policy number GLT-10761 ("the Policy") issued by American International Life Assurance Company of New York ("AI Life") to AIG. AIG issued a Summary Plan Description, which outlines the terms of the LTD Plan. See AR at AG 0001-0022.

3.      AIG was the policyholder of the Policy. AR at AG 0003.

---

[1] The parties will refer to the documents [which defendants have numbered] considered by AIG during the claim and review as the "Administrative Record," or the abbreviated "AR." The parties are filing only those portions of the AR that are cited in their respective briefs.

1728033.1

4. AIG was the plan administrator of the LTD Plan. AR at AG 0020.

5. To be eligible to receive a benefit, the LTD Plan requires that a participant (including Curry) be Disabled as that term is defined under the Plan. AR at AG 0013.

6. Under the terms of the LTD Plan, Disabled or Disability (for a Class 2 employee like Curry) means that:

> (1) during the Elimination Period; and
> (2) for the next 24 months, you are prevented by:
>
>> (a) accidental bodily injury;
>> (b) sickness;
>> (c) mental illness;
>> (d) substance abuse; or
>> (e) pregnancy,
>
> From performing one or more of the Essential Duties of Your Occupation, and as a result your Current Monthly Earnings are less than 80% of your indexed Pre-disability Earnings.
>
> After that, you must be so prevented from performing one or more of the Essential Duties of Any Occupation. AR at AG 0005.

7. Under the terms of the LTD Plan, Essential Duty means a duty that:

> (1) is substantial, not incidental, and
> (2) is fundamental or inherent to the occupation; and
> (3) can not be reasonably omitted or changed.
>
> To be at work for the number of hours in your regularly scheduled workweek is also an Essential Duty. However, to be at work in excess of 30 hours a week is not an Essential Duty.
>
> AR at AG 0005.

8. Under the terms of the LTD Plan, Any Occupation means an occupation for which you are qualified by education, training or experience. AR at AG 0004.

9. The LTD Plan also contains the following benefit limitation provision:

> We will terminate benefit payment on the first to occur of:
> ...
> (1) the date you are no longer Disabled;

2

1728033.1

>   ...
>   (6) the date you refuse to receive recommended treatment that is generally acknowledged by physicians to cure, correct or limit the disabling condition;
>   ...
>   (7) the date you refuse to participate in a Rehabilitation program, or refuse to cooperate with or try:
>
>>    (a) modifications made to the work site or job process to accommodate your identified medical limitations to enable you to perform the Essential duties of Your Occupation, or a reasonable alternative...

AR at AG 0013.

10. The LTD Plan states the following:

>   Who interprets policy terms and conditions?
>
>   AI Life Assurance Company of New York has full discretion and authority to determine eligibility for benefits and to construe and interpret all terms and provisions of the Group Insurance Policy.

AR at AG 0019.

11. Curry last worked on May 16, 2001. AR at AG 0632.

12. On October 15, 2001, Curry filed a claim for benefits under the LTD Plan. AR at AG 0631-0640.

13. By letter dated January 23, 2002, AI Life approved Curry's claim for benefits under the LTD Plan, effective November 13, 2001. AR at AG 0269-0271.

14. In a letter dated May 19, 2003, AI Life advised Curry that it had initiated an investigation to determine if she would continue to qualify for LTD benefits after November 13, 2003, when Curry would continue to be eligible for benefits only if she were prevented from performing the duties of Any Occupation. AR at AG 0268.

15. On March 17, 2004, AI Life advised Curry that she continued to qualify for benefits beyond November 13, 2003. AR at AG 0267.

3

1728033.1

16. On September 14, 2004, AI Life obtained an Employability Analysis Report pertaining to plaintiff. AR at AG 0725-0806.

17. In a letter dated September 27, 2004, AI Life advised Curry that it had terminated her benefits. AR at AG 0324-0326.

18. In a letter dated October 21, 2004, Curry appealed AI Life's decision to terminate her benefits. AR at AG 0649-0650.

19. At the request of AI Life, Dr. Robert Y. Pick conducted a medical records review and issued a report dated November 14, 2004. AR at AG 0349-0357.

20. Dr. Pick wrote a letter to Dr. James Lee. AR at AG 0178-0179.

21. At the request of AI Life, Lewis Goodkin, M.D., F.A.C.S., issued a report dated February 2, 2005 regarding an examination of plaintiff and her medical records. AR at AG 0130-0131.

22. In a letter dated May 12, 2005, AI Life upheld its decision to terminate plaintiff's benefits. AR at AG 0329-0330.

23. On June 28, 2005, Dr. Pick conducted a follow up record review regarding plaintiff's records from Dr. Glushakow and AI Life's report from Dr. Goodkin. AR at AG 0207-0211.

24. In a letter dated June 30, 2005, AI Life re-affirmed its decision to terminate Curry's benefits. AR at AG 0331-0332.

25. On December 1, 2005, Dr. Pick issued an addendum to his prior reports. AR at AG 0196-0198.

26. In a letter dated January 18, 2006, AI Life re-affirmed its decision to terminate plaintiff's benefits. AR at AG 0333-0334.

27. In a letter dated April 11, 2006, Curry again appealed AI Life's decision. AR at AG 0158-0162.

28. On or about May 3, 2006 Curry notified AI Life that she had terminated her lawyer, and AI Life agreed to stay the appeal to allow Curry to obtain a new lawyer and with that lawyer to complete her appeal. AR at AG 0138; 0259-0260.

29. In a letter (originally) dated July 5, 2006, Curry's new lawyer submitted an appeal to AI Life. AR at AG 0317-0323.

30. At the request of AI Life, Dr. Phillip Marion conducted a records review and prepared a report dated August 23, 2006. AR at AG 0254-0257.

31. Curry's lawyer sent a September 7, 2006 letter to AI Life by fax and mail. AR at AG 0249.

32. Curry's lawyer sent a September 13, 2006 letter to AI Life by fax and mail. AR at AG 0815.

33. Curry's lawyer sent a September 26, 2006 letter to AI Life by fax and mail. AR at AG 0816.

34. In a letter dated September 28, 2006, AI Life upheld its decision to deny benefits. AR at AG 0358-0361.

35. By letter dated October 10, 2006, Curry's lawyer requested a copy of Dr. Marion's report, and AI Life responded by letter, dated October 12, 2006, enclosing a copy of the report. AR at AG 0236-0237.

36. On or about November 1, 2006, Curry sent additional documents to AI Life. AR at AG 0817-0820.

Dated: October 31, 2007

| | |
|---|---|
| *s/Kevin J. Brennan* | *s/Michelle M. Arbitrio* |
| Kevin J. Brennan (KB 7687) | Michelle M. Arbitrio (MA 2137) |
| Dwyer & Brennan | Wilson, Elser, Moskowitz, |
| Attorneys for Plaintiff | Edelman & Dicker LLP |
| | Attorneys for Defendants |

6